UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAQUILA HUTSON,

     Plaintiff,

v.                                              Case No.:  8:23-cv-1653-WFJ-NHA

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT & RECOMMENDATION

Plaintiff challenges the November 18, 2022 denial of her claim for supplemental security income ("SSI"). Plaintiff argues that the Administrative Law Judge ("ALJ") erred by finding unpersuasive the opinions of certain psychological consultants and by improperly dismissing evidence concerning the limitations caused by her mental health conditions. Having reviewed the parties' briefing and the record below, I find the ALJ's decision was based on substantial evidence and employed proper legal standards. I recommend the decision be affirmed.

### I.    Procedural History

Plaintiff applied for a period of disability and SSI. R. 437. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. R. 107, R. 126. Plaintiff then requested an administrative

1

hearing. R. 345. The ALJ conducted a hearing at which Plaintiff appeared and testified. R. 56-66. At the conclusion of the hearing, the ALJ ordered that Plaintiff undergo two consultative examinations—one for her physical conditions and one for her mental conditions. R. 65. After those were completed, the ALJ held a second administrative hearing to solicit testimony from a vocational expert. R. 46-55.

The ALJ used the Social Security Regulations' five-step, sequential evaluation process to determine whether Plaintiff was disabled. R. 11-12. That process analyzes:

1) Whether the claimant is currently engaged in substantial gainful activity (if so, she is not disabled);

2) If not, whether the claimant has a severe impairment or combination of impairments (if not, she is not disabled);

3) If so, whether the impairment(s) meet(s) or equal(s) the severity of the specified impairments in the Listing of Impairments (if so, she is disabled);

4) If the impairment does not, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of her past relevant work despite the impairment (if so, she is not disabled); and

5) If not, whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience (if so, she is not disabled).

20 C.F.R. § 416.920(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Plaintiff had not engaged in substantial gainful activity since April 14, 2020, the application date. R. 12.

2) Plaintiff did have severe impairments, specifically, right knee osteoarthritis; obesity; depressive, bipolar, and related disorders; schizophrenia spectrum disorder; and other psychotic disorders. *Id.*

3) Notwithstanding the noted impairments, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13.

4) Relevant here, Plaintiff could perform simple, routine, and repetitive tasks, make simple work-related decisions, tolerate changes in the simple work setting, and perform light work as defined in 20 CFR 416.967(b). She could frequently interact with supervisors. She could occasionally interact with coworkers. She could not interact with the public. R. 16.

3

5) Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), Plaintiff could work as a merchandise marker, a mail sorter, and a routing clerk. R. 29.

Accordingly, based on Plaintiff's age, education, work experience, and RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled. *Id.*

Following the ALJ's ruling, Plaintiff requested review from the Appeals Council, which denied it. R. 1-6. Plaintiff then timely filed a complaint with this Court. Doc. 1. Plaintiff filed a brief opposing the Commissioner's decision (Doc. 14), and the Commissioner responded (Doc. 15). Plaintiff did not file a reply brief. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    The Record

Plaintiff, who was born in 1977, did not complete high school and previously worked as a housekeeper. R. 437, 459. Plaintiff claims she became disabled on June 15, 2014. R. 438. Plaintiff alleges her disability resulted from mental issues, schizophrenia, arthritis, and asthma. R. 458.

There is no dispute that Plaintiff has suffered from mental health conditions since childhood, and that she has repeatedly acted or threatened to cause harm herself or others.  The dispute in this case centers primarily around the severity of these mental health conditions and the degree to which they can be managed.

4

A.    Daily Activity

Plaintiff does not work, but independently navigates an unstable housing situation (R. 1842), cares for herself (R. 2028), helps care for her grandmother (R. 1845), performs "light chores" (R. 2028), and diligently attends her medical appointments.

While Plaintiff has suffered from depression, she has been able to manage her symptoms when on medication. *See, e.g.,* R. 1618 (reporting that "medications are working good" and requesting discharge only a few days after June 2014 suicide attempt); R. 1989 (reporting that she feels better after re-starting medications in April 2021). Although she has suffered from outbursts of anger, she has learned to manage her anger through medication (R. 1851) and other techniques, including mindfulness (R. 1833), counting to ten (R. 1845), and walking away from conflict (R. 1837).

Plaintiff was also diagnosed with schizophrenia and has suffered from hallucinations since the age of 14. R. 1837. Plaintiff has regularly reported hearing voices, though these incidents have varied in severity. *See, e.g.,* R. 1727 ("sometimes hears voices at night telling her to hurt herself and other people. . . [S]he always listens to these voices."); 1833 ("[T]he voices are indistinct and she do[esn't] understand what they are saying."); *but see* R. 1834 (denying hearing voices). But, historically, when Plaintiff has taken medication, the auditory hallucinations have lessened, and they have not affected her day-to-

day life. R. 1837 (noting the voices "have decreased . . . to a background noise[,] which is good for her"); R. 1844 ("voices continue but she is not bothered by them and they are not calling her names or telling her to hurt herself."); R. 1846 ("increase in medication helped her voices"). Plaintiff has also reported visual hallucinations, although less frequently. *See* R. 62-63 (testifying to seeing the devil); R. 2063 (reporting visual hallucinations); *but see* R. 1960 (denying visual hallucinations).

And, while Plaintiff has a history of violence toward herself and others, which has led to her repeated confinement (*see, e.g.,* R. 2015 (arrested after a fight)), and suicidal ideation and attempts (R. 1597 (June 2014); R. 1575 (October 2015), R. 1032 (August 2020); R. 2063 (August 2022)), there is some evidence suggesting these incidents have not been solely attributable to her mental health conditions. Rather, some of these incidents appear to have been triggered, in part, by alcohol or drug use.[1] *See, e.g.,* R. 2082 (noting that substance abuse played a role in August 2022 suicide attempt); R. 2007 (noting intoxication during December 2021 fight and suicidal ideation).

---

[1] Plaintiff is not entitled to benefits if drug addiction is a contributing factor material to a disability determination. 42 U.S.C. § 423(d)(2)(c); 20 C.F.R. § 416.935.

B.     Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she had auditory and visual hallucinations, although she did not explain with what frequency, and she "guessed" that medication helped. R. 62-65. Plaintiff testified that, at times, her mood was "all over the place." R. 64-65. And, she reported that she had difficulty getting along with others because she had a short temper. R. 64-65, R. 484.

In addition to these mental health conditions, Plaintiff testified that struggled with reading and math. She got frustrated reading simple sentences, was unsure whether she could read a grocery list, and could not do simple math problems.  R. 60-61.

The ALJ discounted Plaintiff's subjective complaints as to her mental health limitations, finding (1) Plaintiff's mental impairments improved with outpatient treatment and medication, to the point that the hallucinations became "mild," (2) Plaintiff had normal findings during medical examinations, and (3) Plaintiff's claimed limitations were inconsistent with her activities of daily living. R. 22.

C.     Contested Medical Opinions

Medical providers repeatedly noted that Plaintiff had logical thought content and organized thought processes. *See, e.g.,* R. 1612, 1618, 2050, 2073-74.

Relevant and contested here, the ALJ considered the medical opinions of two state agency psychological consultants, Sharon Ames-Dennard, Ph.D. and Gary W. Buffone, Ph.D, who reviewed Plaintiff's medical records but did not treat her.

Both Dr. Ames-Dennard and Dr. Buffone opined that Plaintiff was "not significantly limited" in her ability to: remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple-work-related decisions, complete a normal workday and workweek without interruptions from psychological based symptoms, perform at a consistent pace without an unreasonable number or length of rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. R. 104-06, 120-123.

They further opined that Plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately

8

with the general public, and respond appropriately to changes in the work setting. R. 104-06, 120-23.

Both Dr. Ames-Dennard and Dr. Buffone then opined that Plaintiff was only able to remember, complete, and understand simple one-to-two step tasks; that Plaintiff could work and respond appropriately to co-workers, supervisors, and the general public on a limited basis; and that Plaintiff was able to adapt to the usual stress in the work environment. R. 105-06, R. 124.

The ALJ concluded that, although the opinions were well-supported and the general finding that Plaintiff "has no more than moderate mental limitations was consistent with the record overall," "some of the limitations Dr. Ames-Dennard and Dr. Buffone described [we]re vague, and these experts did not have the same opportunity as the undersigned to review the evidence submitted through the date of the hearing." R. 25.

The ALJ then adopted Dr. Ames-Dennard's and Dr. Buffone's opinions that Plaintiff was able to perform simple work tasks and make simple decisions and did not have "substantial deficits" in her ability to tolerate changes in the workplace. *Id.*; R. 104-106; R. 122-24. But, incorporating the more recent evidence, such as Plaintiff's December 2021 and August 2022 hospitalizations for suicide ideation, the ALJ found Plaintiff to be *more* restricted in her ability to interact with co-workers and the general public than Dr. Ames-Dennard and Dr. Buffone opined. R. 25; R. 104-06; R. 122-24. And, although the ALJ did not

specifically limit Plaintiff to one-to-two step tasks, as Dr. Ames-Dennard and Dr. Buffone opined (R. 104-106, R. 122-24), she found that Plaintiff was limited to performing "simple, routine, and repetitive tasks." R. 25.

Based on all the evidence in the record, the ALJ found that Plaintiff had the residual functional capacity to "perform simple, routine, and repetitive tasks, make simple work-related decisions, and interact with supervisors frequently and coworkers occasionally, she is limited to no interaction with the public, and she can tolerate changes in the simple work setting." *Id.*; R. 16.

## III.   Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no such deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards she employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV.   Analysis

Plaintiff alleges the ALJ erred in determining Plaintiff's residual functional capacity (RFC) by (1) improperly discounting the opinions of state medical examiners, Sharon Ames-Dennard, Ph.D. and Gary W. Buffone, Ph.D.,

that Plaintiff is limited to one-to-two step tasks; and (2) improperly discounting record evidence of the severity of her mental conditions in favor of "cherry picked" evidence of her symptoms on her best days.

### A. The ALJ's Evaluation of Dr. Ames-Dennard's and Dr. Buffone's Medical Opinions

Plaintiff first argues that the ALJ erred by discounting the opinion of the state agency psychological consultants, Drs. Ames-Dennard and Buffone, that Plaintiff was limited to one-to-two step tasks. Plaintiff mistakenly asserts that the ALJ discounted these opinions as "somewhat persuasive overall," providing no explanation other than that "some of the limitations" the doctors identified were "vague." Pl. Br. (Doc. 14) at p. 15. Plaintiff argues that, had the ALJ accepted the opinion that Plaintiff was limited to one-to-two step tasks, Plaintiff could not have performed the jobs the vocational expert identified at Step 5, as these required more than one-to-two step tasks. In other words, had the ALJ limited Plaintiff to one-to-two step tasks, she could not perform any jobs that existed in substantial numbers in the national economy.

#### 1.    Legal Standard for Evaluating Medical Opinions

The RFC is the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess the RFC based on "all the relevant evidence in the [] record," including the medical evidence, and must consider all the claimant's impairments, both severe and non-severe. *Id.*

§ 416.945(a)(1)-(3). The ALJ considers medical opinions, among other things, in making the RFC assessment. *Id.* § 416.945(a)(3).

In looking at the medical opinions in the record, the ALJ need not assign specific evidentiary weight to any medical opinion. *Id.* § 416.920c(a). The ALJ must, however, consider five factors in evaluating the persuasiveness of a medical opinion: supportability, consistency, relationship with claimant, specialization, and other factors. *Id.* § 416.920c(c)(1)-(5).

Moreover, the ALJ must articulate how she considered the supportability and consistency factors, which the regulations deem the most important. *Id.* § 416.920c(b)(2). As to supportability, the more relevant the objective medical evidence and supporting explanations from the medical source, the more persuasive the medical opinion will be. *Id.* § 416.920c(c)(1). As to consistency, the more consistent a medical opinion is with the evidence from other sources, the more persuasive the medical opinion will be. *Id.* § 416.920c(c)(2).

> 2. The ALJ's Discussion of Dr. Ames-Dennard's and Dr. Buffone's Opinions

Neither Dr. Ames-Dennard nor Dr. Buffone examined Plaintiff; Rather, Dr. Ames-Dennard reviewed the record on July 16, 2020 (R. 107), and Dr. Buffone did so on November 15, 2020 (R. 124). R. 78.

13

Importantly, the record the ALJ reviewed contained medical records from the period after Dr. Ames-Dennard and Dr. Buffone issued their opinions, including records concerning Plaintiff's December 2021 and August 2022 hospitalizations for suicide ideation. R. 2007, 2015, 2083. And, Dr. Ames-Dennard and Dr. Buffone made their opinions without the benefit of reviewing the opinion of consultative examiner Maria Otero-Suria, Psy.D., who examined Plaintiff in May 2022. R. 2037. In an independent medical examination, Dr. Otero-Suria noted that Plaintiff was able to answer all questions presented and was able to give specific information and dates without difficulty. *Id.* Dr. Otero-Suria found her to have only mild limitations in understanding, remembering, and carrying out simple instructions. R. 2041. However, she noted that Plaintiff had more marked limitations in following complex instructions. *Id.*

Both Dr. Ames-Dennard and Dr. Buffone opined that Plaintiff was "not significantly limited" in many abilities, including remembering work procedures and remembering and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, completing a normal workweek without interruptions from psychological based symptoms, getting along with coworkers or peers without distracting them, and maintaining socially appropriate behavior. R. 104-06, 120-123. They further opined that Plaintiff was moderately limited in her ability to

14

understand, remember, and carry out detailed instructions, to work without being distracted by others, and to interact appropriately with the general public. R. 104-06, 120-23. Ultimately, Dr. Ames-Dennard and Dr. Buffone opined that Plaintiff was only able to remember, complete, and understand simple one-to-two step tasks; that Plaintiff could work and respond appropriately to co-workers, supervisors, and the general public on a limited basis; and that Plaintiff was able to adapt to the usual stress in the work environment. R. 105-06, R. 124.

The ALJ addressed these medical opinions in her decision. R. 24-25. She concluded that, although the opinions were well-supported and the general finding that Plaintiff "has no more than moderate mental limitations is consistent with the record overall," "some of the limitations Dr. Ames-Dennard and Dr. Buffone described are vague, and these experts did not have the same opportunity as the undersigned to review the evidence submitted through the date of the hearing." R. 25.

Thus, the ALJ adopted Dr. Ames-Dennard's and Dr. Buffone's opinions that Plaintiff was able to perform simple work tasks and make simple decisions. *Id.*; R. 104-106; R. 122-24. But, incorporating the more recent evidence, such as Plaintiff's December 2021 and August 2022 hospitalizations for suicidal ideation, the ALJ found Plaintiff to be *more* restricted in her ability to interact with co-workers and the general public than Dr. Ames-Dennard and

Dr. Buffone opined. R. 25; R. 104-06; R. 122-24. And, although the ALJ did not specifically limit Plaintiff to one-to-two step tasks, as Dr. Ames-Dennard and Dr. Buffone opined (R. 104-106, R. 122-24), she found that Plaintiff was limited to performing "simple, routine, and repetitive tasks." R. 25.

Plaintiff does not contest that the ALJ articulated the supportability and consistency factors, as she was required to do. 20 C.F.R. § 416.920c(b)(2). Nor does Plaintiff criticize the ALJ's rejection of Dr. Ames-Dennard's and Dr. Buffone's opinions as to Plaintiff's social limitations in favor of more restrictive limitations.

      3.    The ALJ's Rejection of the One-to-Two Step Task Limitation

Plaintiff attacks the ALJ for not adopting Dr. Ames-Dennard's and Dr. Buffone's opinions that Plaintiff could remember, complete, and understand only one-to-two step tasks, finding instead that Plaintiff was limited to "simple, routine, and repetitive tasks."[2] Plaintiff argues, in essence, that the record

---

[2] Plaintiff also contends that an individual restricted to "two-step tasks" would be unable to perform the jobs identified by the vocational expert, as they require a reasoning level of two. Pl. Br. (Doc. 14) at pp. 16-17. But the ALJ did not include a limitation to "two step tasks" in the RFC. Instead, the ALJ concluded that the evidence supported an RFC with the limitation to "simple, routine, and repetitive tasks." R. 16. The Eleventh Circuit has held that level 2 reasoning jobs fall within this RFC limitation. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316-17 (11th Cir. 2021) (distinguishing level 3 reasoning from level 1 and level 2 reasoning and finding, "[T]here is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning"); *Valdez v. Commissioner of Social Security*, 808 F. App'x 1005,

could support a different RFC determination. This is outside of the scope of this Court's review. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth*, 703 F. 2d at 1329) ("To the extent that [the claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner] . . . . even if the evidence preponderates against' the decision") (alterations in original).

The question for this Court is not whether the record could support a finding that Plaintiff is limited to one-to-two step tasks. The question is whether the ALJ's RFC finding that Plaintiff could perform "simple, routine, and repetitive tasks" is supported by substantial evidence. I find it is.

Although Plaintiff reported having memory issues (R. 484-85), medical providers regularly found her memory to be intact (*see, e.g.,* R. 812, 1602), and Plaintiff reported that she could remember things if she wrote them down. R. 484-85.

Despite testifying that she did not know if she could read a grocery list (R. 60), Plaintiff was able to follow the written instructions on her social security paperwork. R. 471-72, 475-77, 479-85. Plaintiff was able to use her

---

1009 (11th Cir. 2020) (an individual limited to simple, routine work could perform jobs at reasoning levels 1 and 2).

cellphone to hail an Uber and order groceries. R. 482. She was also able to help care for her elderly grandmother. R. 1845.

Even when Plaintiff was distressed, she had good concentration. R. 1585 (after suicide attempt), R. 1602 (after aunt dying). And, her cognition was within normal limits. R. 639, 1585, 2073. Plaintiff's treating provider, Beverly Brown, APRN, found that Plaintiff had only slight limitations in her ability to sustain a routine without special supervision and to maintain attention and concentration for extended periods. R. 1813. And, consultative examiner Maria Otero-Suria, Psy.D., observed that Plaintiff had only mild difficulty with simple instructions and carrying out tasks. R. 2041.

Thus, there is "more than a scintilla" of evidence to support the conclusion that Plaintiff had the RFC to perform "simple, routine, and repetitive tasks." *See Winschel*, 631 F.3d at 1178. I find that the ALJ did not commit reversible error by incorporating this limitation in Plaintiff's RFC.

### 4.    Discounting Opinions as "Vague"

Plaintiff also criticizes the ALJ's discussion of Dr. Ames-Dennard's and Dr. Buffone's opinions, in which the ALJ noted "some of the limitations Dr. Ames-Dennard and Dr. Buffone described are vague" (R. 25), because the ALJ did not explain what she meant by "vague." Pl. Br. (Doc. 14) at p. 15. But there is no requirement that the ALJ specifically articulate anything more than the supportability and consistency factors when discussing the weight given to a

medical opinion (*see* 20 C.F.R. § 416.920c(b)(2)), which she did here. Rather, the ALJ must simply state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards she employs. *See Keeton*, 21 F.3d at 1066.

Here, the ALJ did so. She stated that she found Dr. Ames-Dennard's and Dr. Buffone's opinions to be only partially persuasive because the two consultants were unable to review medical records created after the formulated their opinions, and she clearly articulated which portions of the opinions she was adopting. R. 25. And, while the ALJ did not explicitly explain which portions of their opinions were vague, she articulated the RFC with more specificity than Dr. Ames-Dennard's and Dr. Buffone's opinions; for example, the doctors opined that Plaintiff could work with co-workers on a "limited" basis, which is not defined by the social security regulations, and the ALJ specified that Plaintiff could interact with coworkers "occasionally," which is defined by the regulations as occurring up to one-third of the time, *see* SSR 83-10; R. 24-25.

The ALJ explained her finding that Dr. Ames-Dennard's and Dr. Buffone's opinions were partially persuasive sufficiently to allow this Court to conduct a meaningful review.

B. Substantial   Evidence   Supporting   the   ALJ's   Findings
Notwithstanding Record Evidence of Limitations

Plaintiff next challenges the ALJ's conclusion that Plaintiff maintained

the mental capacity to work. Pl. Br. (Doc. 14) at p. 18. Plaintiff argues that the

ALJ improperly "cherry picked" evidence from the record, such as normal

examination findings, to discount other evidence, including Plaintiff's

testimony, portraying the severity of her hallucinations, anger outbursts, and

mood swings. *Id.*

1.   Legal Standard for Considering Subjective Testimony in
forming the RFC

Again, an RFC is the most that a claimant "can still do despite [her]

limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess the RFC based on

"all of the relevant medical and other evidence," including "descriptions and

observations of [a claimant's] limitations . . . including limitations that result

from [a claimant's] symptoms, such as pain," as described by the claimant. *Id.*

§ 416.945(a)(3).

In forming the RFC, an ALJ may discredit a claimant's subjective

complaints. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005).

However, the ALJ must articulate "explicit and adequate reasons for doing so."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

### 2.   Substantial Evidence of Plaintiff's Capacity to Work

Plaintiff first argues that the ALJ "cherry picked" evidence from when Plaintiff was compliant with her medications to misrepresent that Plaintiff's hallucinations, anger outbursts, and mood swings were only "mild." Plaintiff claims that substantial evidence does not support the finding that Plaintiff maintained the mental functional capacity to work in light of record evidence demonstrating Plaintiff's struggle to remain compliant with her medication, her acts of violence, and her suicide attempts. But, "[t]o the extent that [the claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner] . . . . even if the evidence preponderates against' the decision" *Moore*, 405 F.3d at 1213. Here, I find substantial evidence supports the ALJ's finding that Plaintiff maintained the RFC to work despite her mental conditions and lack of strict compliance with medication.

First, although Plaintiff suggests otherwise, there is substantial evidence that Plaintiff's hallucinations were "mild." Plaintiff sometimes denied hearing voices altogether. *See, e.g.,* R. 1851 (no voices in June 2021); R. 1843 (no voices in July 2021). And, she otherwise generally reported them as a "background noise" or something that did not interrupt her life. *See, e.g,* R.

1844 ("voices continue but she is not bothered by them"); R. 1845 (continued to hear voices occasionally, but it does not bother her); R. 1842 (medication "decreased the voice in her head"); R. 1837 ("voices have decreased and its like a background noise" in September 2021); R. 1848 (reports hearing voices more and they are telling her she is not a good person, but they do not disturb her sleep). Although she described a vivid visual hallucination at the administrative hearing (R. 63), she sometimes denied visual hallucinations (*see, e.g.* R. 817, 1960) or omitted them from her complaints (*see, e.g.,* R. 1842, 1845).

Next, as to Plaintiff's mood swings and anger outbursts, substantial evidence in the record shows that Plaintiff was able to manage these through medication (R. 1851) mindfulness (R. 1833), counting to ten (R. 1845), and walking away from conflict (R. 1837).

While, as Plaintiff points out, she did suffer from anger outbursts and suicidal ideation, it does not appear these were wholly caused by her mental illnesses. Rather, these anger outbursts and suicide attempts corresponded to the use of drugs or alcohol. *See* 42 U.S.C. § 423(d)(2)(c) (a claimant is not entitled to benefits if drug addiction is a contributing factor material to a disability determination). For example, on December 21, 2021, Plaintiff threatened suicide after drinking. R. 2007. Four days later, on December 25, 2021, the police were again called because Plaintiff had an anger outburst;

upon her arrest, Plaintiff was aggressive with police and stated she wanted to kill herself. R. 2015, R. 2018. Notes from the arrest, as well as bloodwork completed at the hospital, show that she was intoxicated at the time; she also tested positive for several controlled substances. R. 2015, R. 2018. In August 2022, Plaintiff was again arrested for fighting; but the hospital records show that "[i]t appears that substance abuse may have played a role in her behavior." R. 2080; R. 2082 (Plaintiff admitting, "I hit the blunt and that probably caused it.").

Finally, there is substantial evidence to show that, even when Plaintiff was not compliant with her medication, she could still function. For example, in March 2021, Plaintiff reported that she was able to improve her mood by walking. R. 1861. When she was out of her medication in May 2021, she was still "well groomed" with combed hair. R. 1854; *see also* R. 1853 (well-groomed and wearing makeup despite needing medication adjustment). In October 2021, Plaintiff reported that she was not compliant with her medication because it made her drowsy; nonetheless, the provider noted that Plaintiff was the happiest that she had ever seen her. R. 1833. And, despite being off medication, Plaintiff reported that the voices in her head were "indistinct" and she did not understand what they were saying. *Id.*

Thus, I find, there is substantial evidence to support the ALJ's conclusion that Plaintiff had the RFC to work despite her mental health conditions.

### 3.    Consideration of Examination Findings

Lastly, Plaintiff takes issue with the ALJ's reliance on "normal" mental examination findings, such as Plaintiff's cooperation in clinical settings, to discount the evidence about Plaintiff's about her anger issues. Pl. Br. (Doc. 14) at p. 22.

Plaintiff claims this was error under the binding precedent in *Simon v. Commissioner, Social Security Administration*, 7 F. 4th 1094 (11th Cir. 2021). In *Simon*, the Eleventh Circuit noted that a consultative examiner's one-time observations of a claimant in the medical setting, noting good judgment and calculation abilities, were largely irrelevant to whether a claimant with mental health issues had the capacity to work, and could not reasonably support the ALJ's discounting of a consultative examiner's opinions. 7. F. 4th at 1108 ("[T]he fact that Simon can communicate, maintain eye contact, and follow simple instructions during a mental-health evaluation does not have any obvious bearing on his mood swings, his panic attacks, his outbursts of anger, or his fear of leaving his home.").

But, unlike in *Simon*, where the ALJ erroneously relied on "normal" examination findings in a clinical setting during a single, routine, scheduled

24

medical examination, the ALJ here relied on findings that Plaintiff was "cooperative" or "alert" in different examinations that occurred over time and in different circumstances. The ALJ mentioned her examination findings during times that Plaintiff experienced suicidal ideation and was under arrest (R. 19, R. 20, R. 21), during her consultative examination (R. 15), when Plaintiff urgently needed medication (R. 19), and when she needed emergency care for her knee (*id.*). Thus, the Eleventh Circuit's warning in *Simon* does not apply here.  The ALJ did not err by relying on Plaintiff's examination findings during treatments in different contexts, including following suicide attempts and anger outbursts.

Moreover, as previously discussed, there is substantial evidence in the record to show that Plaintiff was able to manage her anger and mood swings through medication (R. 1851) and other methods, including mindfulness (R. 1833), counting to ten (R. 1845), and walking away from conflict (R. 1837). And, to the extent Plaintiff had anger outbursts, these corresponded with her alcohol and/or drug use. *See, e.g.,* R. 2007, R. 2015, R. 2018, R. 2080; R. 2082.

Thus, I find that the ALJ articulated substantial and adequate reasons to discount Plaintiff's subjective complaints and other evidence concerning the limitations caused by her mental illnesses, and I find that substantial evidence supports the ALJ's conclusion that Plaintiff could work despite her severe mental impairments.

## V.    Conclusion

For the reasons stated, I RECOMMEND that the District Judge order:

(1)    That the decision of the Commissioner be affirmed; and

(2)    That the Clerk of Court enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

REPORTED in Tampa, Florida, on May 6, 2024.


NATALIE HIRT ADAMS
United States Magistrate Judge


Copies: All Parties of Record

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.